UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRETT M.,                                                          Case No. 3:23-cv-00294-AR

                                Plaintiff,                          OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                        Defendant.

_____

**ARMISTEAD, Magistrate Judge**

        In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Brett M. (his last name omitted for privacy) challenges the Administrative Law

Judge's (ALJ) evaluation of his residual functional capacity (RFC). Plaintiff asserts that the ALJ

committed multiple errors in formulating the RFC, including failing to incorporate all his alleged

limitations, and improperly rejecting medical opinions that support his symptom allegations.

Because the court finds the ALJ's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on May 22, 2019, alleging disability beginning June 15, 2018.[2] (Tr. 226.) His claim was initially denied on September 6, 2019, and again upon reconsideration on May 8, 2020. (Tr. 75, 109.) Afterward, plaintiff filed for a hearing that was held before the ALJ on January 11, 2022. (Tr. 33.) At the hearing, plaintiff amended his alleged onset date to July 23, 2018. (Tr. 39.)

In denying plaintiff's application, the ALJ followed the five-step sequential evaluation process.[3] At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since July 23, 2018, his amended alleged onset date. (Tr. 18.) At step two, the ALJ determined that he had the following severe impairments: history of trigeminal neuralgia and right carpal tunnel syndrome (CTS). (Tr. 18.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 20.)

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    In May 2015, plaintiff was granted DIB for a closed period from January 1, 2011, through April 30, 2014. The ALJ in that decision found plaintiff was disabled, due to trigeminal neuralgia and mood disorder, but found that successful treatment had improved plaintiff's symptoms to where he was no longer considered disabled after April 30, 2014. (Tr. 15.)

[3]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that plaintiff has the RFC to perform light work with the following limitations:

> no more than frequent handling and fingering with his right upper extremity. [He] would also need to avoid concentrated exposure to unprotected heights, moving machinery, and similar hazards. [His] symptoms are exacerbated by stress, and consequently he would function best in a low stress work environment. He is therefore limited to simple, repetitive, routine tasks.

(Tr. 21.)

At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 27.) In light of his RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as garment sorter, cafeteria attendant, and office helper. (Tr. 28.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**DISCUSSION**

**A.    *The RFC Formulation***

Plaintiff argues that the ALJ erred by "improperly evaluating [his] severe impairment of trigeminal neuralgia" in forming the RFC. (Pl. Br. at 3.) According to plaintiff, the ALJ failed to incorporate all of his alleged limitations into the RFC, including (1) symptom "flare-ups" that would "cause him to miss work or be off-task an unacceptable amount of time"; (2) the effect of stress intolerance on his ability to work; and (3) how "severe mental limitations regarding social interaction deficits and inability to manage workplace changes" affect his ability to sustain full time work. (Pl. Br. at 3-20.) As plaintiff's arguments rest largely on the reliability of his own symptom testimony, the court concludes the ALJ did not err because the ALJ provided clear and convincing reasons for discounting plaintiff's symptom testimony.

**1.    *Plaintiff's Symptom Testimony***

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard

Page 4  – OPINION AND ORDER

requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff contends he cannot engage in full-time, competitive employment because of his physical and mental health conditions, including trigeminal neuralgia, trigeminal neuropathy, depression and anxiety. (Tr. 86.) In his 2019 function report, plaintiff stated that constant pain in his face makes it impossible to "routinely complete self-care" and have "normal interactions with others." (Tr. 290.) Plaintiff wrote that often he has multiple days each week where he cannot leave the house or get out of bed due to facial pain. (Tr. 290.) Plaintiff testified that stress exacerbates his symptoms, and that he is "overwhelmed easily." (Tr. 296.) Plaintiff described that his daily activities include looking for work, with the assistance from vocational rehabilitation services, as well as cleaning his house, taking short walks, shopping for his father, and taking his father to medical appointments, when he can. (Tr. 291.)

At his hearing, plaintiff testified that he was laid off from his last job when management was no longer able to accommodate his need to take breaks and rest due to pain flare-ups from his trigeminal neuralgia. (Tr. 40.) Plaintiff alleges he is "always in about a six [out of ten] of pain" and that activities such as breathing, walking, brushing his teeth, eating food, and laying down cause his pain level to spike to a seven or eight. (Tr. 44.) Plaintiff contends that his constant pain affects his ability to focus and complete tasks, and that he "has a very hard time, mentally." (Tr. 44-45.) Plaintiff testified that his medications cause significant side effects, such as an inability to "keep [his] mind or eyes focused on anything" and a tendency to "lose [his] balance a lot." (Tr. 45.) Plaintiff also testified that his CTS has progressed so much that he no longer has use of three fingers on his right hand due to complete numbness. (Tr. 46.) According

Page 5  – OPINION AND ORDER

to plaintiff, he can no longer use his right hand effectively for gripping and holding items and can only perform "one finger" typing. (Tr. 47.)

The ALJ discounted plaintiff's subjective symptom testimony because: (1) plaintiff's treatment history was inconsistent with claims of debilitating pain; (2) his activities of daily living are inconsistent with his claimed limitations; and (3) his medical records show largely normal objective findings during medical appointments.

### a.    *Treatment inconsistent with claims of debilitating pain*

Plaintiff argues that the ALJ improperly excluded limitations caused by flare-ups from the RFC. (Pl. Br. at 4.) According to plaintiff, the ALJ "provided no reason" to discount his testimony of "frequent exacerbations of unrelenting pain which interrupts his ability to sustain work." (Pl. Br. at 8.) Plaintiff also contends that the ALJ overlooked plaintiff's testimony of "frequent days each week wherein he is unable to even get out of bed due to incapacitating [] pain." (Pl. Br. at 8.) The court disagrees.

The Ninth Circuit has consistently held that an ALJ may rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to discount a claimant's symptom testimony. *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti,* 533 F.3d at 1039); SSR 16-3p, *available at* 2017 WL 5180304 (Oct. 25, 2017) (An ALJ may conclude that a claimant's testimony regarding the intensity and persistence of their symptoms is inconsistent with the record if the "frequency or extent of treatment sought is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms.").

In this case, the ALJ discounted plaintiff's symptom testimony because plaintiff's treatment history was inconsistent with his claims of constant, disabling pain. (Tr. 22-23.) The

Page 6  – OPINION AND ORDER

ALJ observed that, although plaintiff alleged he lost his job due to his medical condition in July 2018, he sought no medical treatment for his symptoms until April 2019. (Tr. 22.) Additionally, the ALJ noted that plaintiff inconsistently described his symptom onset and severity to providers. For example, plaintiff testified that his symptoms became disabling in July 2018, but records show that plaintiff told his provider that his symptoms worsened in late 2019. (Tr. 406.) Plaintiff told another provider that he experienced "constant throbbing pain since his [] surgery for trigeminal neuralgia" in 2013. (Tr. 22, 412.) This statement contrasts with post-surgery treatment notes from 2014 to 2015, which describe plaintiff as having "showed significant improvement in pain and other symptoms." (Tr. 22, citing Tr. 406, 407, 412, 415, 520, 575, 580, 618.) Furthermore, the ALJ pointed to a gap in plaintiff's treatment from March 2020 to April 2021, which was inconsistent with his claims of debilitating daily pain. (Tr. 22.) Finally, the ALJ noted that plaintiff had only two primary care appointments in 2021, despite telling providers that his pain and depression were poorly controlled. (Tr. 22.) The ALJ's findings are supported by substantial evidence here.

Plaintiff does not challenge the ALJ's findings regarding his inconsistent medical treatment. Instead, plaintiff seems to argue that the ALJ erred because he failed to specifically discuss each alleged limitation in the RFC, irrespective of how consistent those allegations are with the record as whole. In contrast, the ALJ is tasked with incorporating only those limitations that can be reasonably accepted as consistent with the evidence in the record. 20 C.F.R. § 404.1529(c)(4). Given the evidence, the ALJ's conclusions as to the severity of plaintiff's symptoms are reasonable. The ALJ did not err in finding plaintiff's treatment history inconsistent with his claims of debilitating pain.

b.    *Activities of Daily Living*

An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal activities of daily living (ADLs). *See* 20 C.F.R. § 404.1529(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn*, 495 F.3d at 639. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina*, 674 F.3d at 1113.

The ALJ discounted plaintiff's testimony because his activities of daily living were inconsistent with his claims of debilitating pain symptoms. (Tr. 22.) The ALJ pointed to plaintiff's function report, where he stated he can drive, clean house, go for walks, do yard work, shop for his father, take his father to medical appointments, and care for animals. (Tr. 291-293.) The ALJ cited a discrepancy between plaintiff's June 2019 function report, where he stated his father "takes care of himself, primarily" and an April 2019 medical report, where he told his provider he cares for his father, who is "largely housebound for physical reasons." (Tr. 24, citing Tr. 291, 351.) The ALJ noted that plaintiff actively looked for work in the hospitality field during his period of alleged disability, seeking vocational rehabilitation services in April 2019. (Tr. 22, citing Tr. 344.) *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (noting that a claimant's attempts at seeking work may be considered when evaluating symptom testimony). Plaintiff told a treating provider he had applied for "prob[ably] 100 jobs" since his alleged disability onset day. (Tr. 344.) The ALJ thus concluded that plaintiff's activities indicate that he would not be precluded from "performing light work activities and simple tasks." (Tr. 24.) The

ALJ's findings are supported by substantial evidence, are a reasonable interpretation of the record, and will not be disturbed.

Plaintiff argues that the ALJ erred in relying on his written symptom testimony while ignoring updated hearing testimony where plaintiff "depicted greater limitations in his daily activities than determined by the ALJ." (Pl. Br. at 10.) Plaintiff asserts that "this error tainted the ALJ's view of how trigeminal neuralgia impacted the RFC." (Pl. Br. at 10.) Plaintiff adds that the RFC limitations "do not address [his] incapacity for substantial periods of time." (Pl. Br. at 10.)

Plaintiff's arguments are unavailing. The Ninth Circuit does not require an ALJ to mention explicitly, each detail of a plaintiff's testimony, such as the need to take extensive, unscheduled time off from work. *Young v. Saul*, 845 F. App'x 518, 520 (9th Cir. 2021); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]"). It is sufficient that the ALJ cited plaintiff's testimony as to his limitations and provided clear and convincing reasons for discounting the alleged severity of those claims. *Young*, 845 F. App'x at 520-21. Furthermore, plaintiff fails to adequately develop his argument to support his assertions. For example, plaintiff does not identify any specific legal error the ALJ made in relying on his written testimony. Nor does plaintiff provide the court with any authority on which his assertions are based. *See Meyers v. Berryhill*, 733 F. App'x 914, 916 (9th Cir. 2018) (noting that "[f]or [] assertions to be cognizable on appeal, they must be accompanied by meaningful arguments other than that the disputed evidence is inconsistent with a claimant's testimony"); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (the court "require[s] contentions to be accompanied by reasons"). This court requires more than assertions in order to meaningfully

assess an ALJ's opinion for error. Thus, the court cannot conclude the ALJ erred in assessing plaintiff's daily activities.

### c.    *Inconsistency with Objective Medical Evidence*

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. A lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). But when objective medical evidence may be used to discount a claimant's testimony. *Adaline S.G. v. Comm'r Soc. Sec. Admin.*, Case No. 6:20-cv-01129-AC, 2021 WL 5316987, at *3 (D. Or. Nov. 15, 2021); *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

In the decision, the ALJ described inconsistencies between plaintiff's alleged symptoms and the objective medical evidence. The ALJ discussed plaintiff's 2019 MRI, which showed largely normal results and "no [] reason for persistent and worsening pain." (Tr. 22, citing Tr. 366.) A January 2020 neurology appointment detailed normal findings, including "no signs of pain behavior, [] normal strength and gait, and [] normal hand coordination and sensation in the upper extremities." (Tr. 22.) A February 2020 EMG showed mild CTS in plaintiff's upper right extremity, and plaintiff was then referred to a pain management specialist. (Tr. 23, citing Tr. 497) However, as the ALJ noted, plaintiff did not follow up on referrals to pain management or

CTS specialists. (Tr. 23.) The ALJ noted that plaintiff had only two medical appointments in 2021, and "made no effort to obtain additional treatment apart from medication from [his] primary care provider." (Tr. 23.) Finally, the ALJ observed that plaintiff did not report any difficulty with concentration or balance, despite having testified that he struggled with concentration and vertigo symptoms. (Tr. 23.)

Plaintiff fails to challenge the ALJ's findings on inconsistencies between the objective medical evidence and plaintiff's symptom testimony and the court finds that the ALJ's findings are supported by substantial evidence and are reasonable interpretation of the record.

## 2. *Additional RFC Arguments*

Plaintiff suggests that the ALJ erred in formulating the RFC because the ALJ failed to include a limitation that addresses his inability to function during trigeminal neuralgia symptom flare-ups. According to plaintiff, the ALJ credited statements that "he would be disrupted in his ability to maintain work[] during those times when he experiences exacerbations of his trigeminal neuralgia impairment." (Pl. Repl. Br. at 4, citing Tr. 23-24.) In plaintiff's view, the ALJ was then required to include a limitation in the RFC that addresses his inability to work during these exacerbations. (Pl. Repl. Br. at 4, citing Tr. 23-24.) The court disagrees with plaintiff's understanding and analysis of the ALJ's conclusions.

Limiting plaintiff to low stress environments does not amount to the ALJ crediting plaintiff's testimony as to his symptom flare-ups. The ALJ rejected plaintiff's testimony that symptom flare-ups disrupt his ability to maintain work. Rather, the ALJ merely credited Dr. Kaur's statement that stress can *aggravate* plaintiff's symptoms. (Tr. 23.) The ALJ crediting that stress can aggravate plaintiff's symptoms is not the same as crediting plaintiff's testimony that his symptoms become so severe as to render him incapable of working. Indeed, the ALJ

separately evaluated and rejected plaintiff's testimony that his symptoms are severe to the point

of his being unable to work. The ALJ laid out in detail why he assessed plaintiff's symptoms as

less limiting than alleged, notably his lack of pain behavior, his failure to seek treatment, his

failure to follow up on recommended treatment, and his largely normal objective medical tests.

(Tr. 22-24.) Contrary to plaintiff's argument, the ALJ did not err in concluding plaintiff "would

experience few flare ups in pain symptoms from stress" given the RFC limitation to low stress

environments. (Pl. Repl. Br. at 2, Tr. 24.) The ALJ concluded that stress exacerbates plaintiff's

symptoms, and a limitation to a low stress environment addresses that concern. Finally, the ALJ

did not determine that plaintiff will not experience pain, should a symptom flare up occur; rather,

the ALJ rejected the attested severity and persistence of plaintiff's symptoms during a flare-up.

Plaintiff's argument thus fails because it relies on plaintiff's own testimony of symptom severity,

which the ALJ properly rejected.

Plaintiff offers several additional arguments that the ALJ erred in formulating the RFC.

For example, plaintiff asserts that the ALJ failed to adhere to SSR 96-8p by "fail[ing] to

demonstrate how the medical and non-medical evidence supported the RFC." (Pl. Br. at 19.) And

he contends that the ALJ failed "to evaluate and define what factors actually caused [p]laintiff's

stress, which was necessary in order to properly determine his maximum capacity to work." (Pl.

Br. at 19.) Plaintiff's arguments are not well developed; he fails to identify facts, case law, or

reasons that show error on the ALJ's part. *See Meyers*, 733 F. App'x at 916 ("[F]or such

assertions to be cognizable on appeal, they must be accompanied by meaningful arguments other

than that the disputed evidence is inconsistent with [certain] testimony."). The court declines to

parse the record for evidence that may support a finding of disability. *Id.* ("[T]he key question is

not whether there is substantial evidence to support a finding of disability, but whether there is

substantial evidence to support the Commissioner's actual finding that claimant is not disabled.")

(quoting *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997)). In short, the ALJ provided

specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony; the

ALJ did not err.

**B.**    ***Medicals Opinion Evidence and Other Evidence***

The regulations require that an ALJ evaluate the supportability and consistency of a

medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. The ALJ must

"articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they]

considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing

whether the medical source provides explanations and objective medical evidence to support

their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how

consistent the opinion is with evidence from other medical and nonmedical sources in the record.

20 C.F.R. § 404.1520c(c)(2).

**1.    *Dr. Kaur's Opinion***

Plaintiff's primary care provider, Divneet Kaur, MD, submitted a medical opinion form

in support of plaintiff's DIB claim in September 2021. (Tr. 880-83.) Dr. Kaur opined that

plaintiff can lift and carry 10 pounds or less, can sit for "about four hours," and can stand and

walk for less than two hours. (Tr. 880-83.) Dr. Kaur wrote that plaintiff would need two to three

unscheduled breaks a day, would need to rest for 12 hours before returning to work, would have

difficulties with attention and concentration for more than two-thirds of each workday, and

would likely miss more than three days of work a month. (Tr. 880-83.)

The ALJ found Dr. Kaur's medical opinion to be unpersuasive, as it lacked supportability and consistency with the medical record. Specifically, the ALJ noted that Dr. Kaur's own treatment records do not document plaintiff as exhibiting pain behavior, weakness or muscle atrophy, difficulty walking, or difficulty concentrating. The ALJ pointed out that Dr. Kaur's notes do not describe plaintiff as having a limited range of motion, or any deficits in fine or gross motor skills. Additionally, the ALJ pointed out that there are no objective medical findings that support the extreme limitations expressed in Dr. Kaur's opinion. The ALJ concluded that he had considered Dr. Kaur's opinion in limiting plaintiff to low-stress work environments to avoid "aggravating trigeminal neuralgia symptoms." (Tr. 27.)

The ALJ's conclusions as to Dr. Kaur's opinion are backed by substantial evidence and are a reasonable interpretation of the evidence. Plaintiff does not advance any specific error in the ALJ's supportability and consistency analysis of Dr. Kaur's opinion; rather, plaintiff argues that the ALJ erred in failing to address the "specific limitation that plaintiff cannot perform even low-stress work," while simultaneously crediting Dr. Kaur's assessment that stress exacerbates plaintiff's symptoms. (Pl. Br. at 12.) According to plaintiff, because the ALJ included a limitation to low-stress work in the RFC, the ALJ needed to specifically discount Dr. Kaur's assessment that plaintiff cannot perform even low-stress work and include it in the RFC. (Pl. Br. at 12.) Plaintiff is incorrect. The ALJ is not required to adopt every limitation set forth in a medical opinion. Rather, the ALJ is tasked with translating limitations that are both supportable and consistent with the record into the RFC. The ALJ discounted the severity of the symptoms described by Dr. Kaur and partially credited the assessment concerning plaintiff's trigeminal neuralgia symptoms by limiting him to low stress environments. The ALJ's path can be reasonably discerned. *See Treichler*, 775 F.3d at 1103 (stating that so long as the ALJ's path can

"reasonably be discerned," a reviewing court will not disturb their findings (citing *Alaska Dep't of Evn't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

### 2.  *Dr. Carney's opinion*

In May 2019, Maureen Carney, MD, provided a report for vocational rehabilitation services regarding plaintiff's ability to return to work. (Tr. 360-61.) The ALJ found Dr. Carney's opinion unpersuasive because the limitations within her assessment "appear[ed] to be based mostly on subjective statements" by the plaintiff. (Tr. 26.) Additionally, the ALJ noted that Dr. Carney did not note any objective medical evidence to support her conclusion. (Tr. 26.) The ALJ concluded Dr. Carney's opinion was not consistent with the medical record as a whole and cited to multiple examples within the record to support this conclusion. (Tr. 26, citing Tr. 338, 349, 351, 364, 366-67, 369-70, 403-05, 406, 407-08, 410, 411-13, 415-16, 422-26, 497.) Plaintiff argues that the ALJ "provided no basis" to reject Dr. Carney's opinion that plaintiff had "social interaction limitations" and "deficiencies due to stress intolerance." (Pl. Br. at 17.)

The ALJ did not err in finding unpersuasive Dr. Carney's opinion. An ALJ may reject a medical opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Ford*, 950 F.3d at 1154 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)); *see also Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (ALJ did not err in rejecting medical opinions that were unsupported by the objective medical evidence (citing *Batson*, 359 F.3d at 1195)); 20 C.F.R. § 404.1520c(a) (supportability is most important factor in considering persuasiveness of medical opinion). In this case, Dr. Carney opined limitations but provided no support or explanation for those limitations. Additionally, the ALJ may reject limitations based solely on plaintiff's self-reports, if the ALJ properly rejected plaintiff's symptom testimony. *See Coleman*, 979 F.3d at 757 (finding that the ALJ did not err in discounting medical opinions that

Page 15  – OPINION AND ORDER

relied on self-reports of pain); *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a []
physician's opinion if it is based to a large extent on a claimant's self-reports that have been
properly discounted[.]"). As discussed above, the ALJ properly discounted plaintiff's symptom
testimony and therefore did not err in rejecting a medical opinion that relied on self-reports that
mirrored the symptom testimony.

Although plaintiff disagrees with the ALJ's analysis, the ALJ's findings are fully
supported by substantial evidence, are a reasonable interpretation of that evidence, and therefore
must be upheld. *Ford*, 950 F.3d at 1154. In summary, the ALJ's conclusions as to plaintiff's
symptom testimony, the RFC formulation, and the medical opinions are based on substantial
evidence and supported by reasonable references drawn from the record. The ALJ did not err.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

IT IS SO ORDERED.

DATED: April 26, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge